UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| _____ | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | No. 25-CR-10334-MJJ |
| | ) | |
| v. | ) | **FILED UNDER SEAL** |
| | ) | Leave to File Granted on |
| STEVEN WAYNE TOMPKINS, | ) | July 16, 2026 |
| Defendant | ) | |
| | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE REGARDING STATE ETHICS LAWS AND/OR VIOLATIONS

Now comes the defendant Steven Tompkins, by and through undersigned counsel, and, pursuant to Fed. R. Evid. 401, 403, 404(b), and 408, respectfully moves this Honorable Court to exclude evidence regarding state ethics laws and any state ethical violations from the federal trial in this matter.  As grounds and reasons therefor, Mr. Tompkins states that this evidence relates exclusively to Massachusetts state ethics laws and his alleged violations thereof, which have no relevance to the charges of Hobbs Act extortion in this case.  As further grounds and reasons for his Motion, Mr. Tompkins incorporates the below Memorandum of law.

The defense acknowledges that this Court has held that Mr. Tompkins failed to satisfy the "exacting standard" for striking the allegations regarding state ethics laws from the Indictment. Dkt. 42 at 2-3 (Gov't Opp'n) (citing cases).  The defense respects, and does not seek reconsideration of, that decision.  But, in the present context of a motion *in limine*, the relevance and admissibility of the ethics-related evidence is squarely presented to the Court for the first time.

1

**REQUEST FOR HEARING**

The defense respectfully requests that oral argument be held on this Motion.

**MEMORANDUM OF LAW**

**I.    Background**

Mr. Tompkins stands charged with two counts of Hobbs Act extortion.  These charges are, in sum and substance, predicated upon Mr. Tompkins's alleged "acquisition of a pre-initial public offering ('IPO') equity interest in stock" of a cannabis company, Ascend.  Dkt. 94 at 1. The government alleges that Mr. Tompkins received the equity interest, and a subsequent refund of his investment, "in exchange for" Mr. Tompkins's "favorable action or inaction as the" Suffolk County Sheriff Department ("SCSD") Sheriff "with respect to the SCSD's partnership with" Ascend.  Dkt. 1 at ¶ 12.

The Indictment also contains certain allegations regarding Massachusetts state ethics laws:

> As SCSD Sheriff, TOMPKINS was a Massachusetts state employee.  As a Massachusetts state employee, TOMPKINS was subject to Massachusetts state ethics laws, including Massachusetts General Laws, Chapter 268A, which prohibited TOMPKINS from (i) soliciting or receiving anything of substantial value, for or because of his official position, or (ii) using his official position to obtain any unwarranted privilege of substantial value for himself, and that which was not properly available to other similarly situated individuals, M.G.L., c. 268A § 23(b)(2).
>
> Sheriff TOMPKINS was aware of the above prohibitions because:
>
> In August, 2015, TOMPKINS entered into a disposition agreement with the Massachusetts State Ethics Commission ("SEC") in which TOMPKINS acknowledged that he had read the prohibition of M.G.L., c. 268A § 23(b)(2) and admitted that he had violated such prohibition when, during his 2013 election campaign, TOMPKINS used his position as Sheriff to cause retail shop proprietors to take

> down his political opponent's campaign signs; and
>
> In November 2020, the SEC served TOMPKINS with a
> preliminary inquiry notice, informing TOMPKINS that he was
> being investigated for violations of M.G.L., c. 268A § 23(b)(2)
> stemming from TOMPKINS creating a paid position at the SCSD
> for his niece in or about 2017, which facilitated her to assist with
> TOMPKINS's childcare, and TOMPKINS using other SCSD staff
> to perform childcare for TOMPKINS from 2014 to at least 2020.
>
> In March 2023, TOMPKINS entered into a disposition agreement
> with the SEC in which TOMPKINS acknowledged that he had
> read the prohibition of M.G.L., c 268A § 23(b)(2) and admitted
> that he had violated such prohibition when he hired his niece and
> used other SCSD staff to provide childcare for TOMPKINS.

Dkt. 1 ¶ 3-4 & n.1.

The government's exhibit list includes seven exhibits, spanning 75 pages, that pertain

solely to the state ethics laws and Mr. Tompkins's alleged violations thereof.  The exhibits

include disposition agreements between Mr. Tompkins and the SEC, full copies of

Massachusetts General Laws Chapters 268A (only one subsection of which is referenced in the

Indictment) and 268B, an SEC Preliminary Inquiry notice reflecting alleged violations of the

ethics laws beyond those subject to the subsequent disposition agreement, and a copy of the

SEC's enforcement procedures.

## II.    Argument

Any evidence regarding state ethical violations is both irrelevant to the charges in this

case and unfairly prejudicial to Mr. Tompkins.

Indeed, rather than serving any permissible evidentiary purpose, the evidence regarding

state ethics law will implicate the propensity inference forbidden by Fed. R. Evid. 404(b).  *See,*

*e.g.*, *United States v. Cortijo-Diaz*, 875 F.2d 13, 15 (1st Cir. 1989) (emphasizing the "central

principle" of Rule 404(b) that "evidence of other acts is *not admissible* to prove propensity to engage in criminal activity"). The rule reflects "long-established notions of fair play and due process, which forbid judging a person on the basis of innuendos arising from conduct which is irrelevant to the charges for which he . . . is presently standing trial, *i.e.*, against finding present guilt based on a 'bad character profile.'" *Id.* Evidence of prior bad acts may, on a proper showing, be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). But this exception requires that the evidence be "*presented for other purposes than to prove bad character*." *Cortijo-Diaz*, 875 F.2d at 15 (emphasis in original). In order to be admissible under Rule 404(b), other act evidence must first have some "'special relevance' to an issue in the case," meaning relevance for a non-propensity purpose. *United States v. Garcia-Sierra*, 994 F.3d 17, 29 (1st Cir. 2021) (citation omitted). Assuming the court finds such relevance, it must then engage in a Rule 403 balancing to determine whether "the probative value of the evidence is substantially outweighed by any unfair prejudice." *Id.* Admission of evidence under Rule 404(b) "is by no means a routine exercise and should not be accepted unless the government articulates with suitable precision the 'special' ground for doing so." *United States v. Arias-Montoya*, 967 F.2d 708, 713 (1st Cir. 1992) (citation omitted); *see also Cortijo-Diaz*, 875 F.2d at 15 ("The general rule is . . . *against* admissibility of 'other act' evidence." (emphasis in original)).

At step one of the inquiry, the evidence regarding state ethics laws has no special relevance to this Hobbs Act prosecution. In order to obtain a conviction for extortion under color of official right, the government must prove "a quid pro quo," meaning "the giving of

something of value – the quid – in exchange for influence over some official conduct of the recipient – the quo." *United States v. DeQuattro*, 118 F.4th 424, 444 (1st Cir. 2024) (citation omitted); *see also United States v. Correia*, 55 F.4th 12, 29 (1st Cir. 2022) ("[T]he offense is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts . . . ." (quoting *United States v. Turner*, 684 F.3d 244, 253 (1st Cir. 2012)). Whether or not Mr. Tompkins violated state ethics rules by asking for campaign signs to be taken down or using his niece as a babysitter while she was employed with the SCSD simply does not have "any tendency to make a fact [of consequence in determining the action] more or less probable." Fed. R. Evid. 401.

The relevant state ethics statute facially differs from federal bribery standards in multiple respects. The statute provides, in pertinent part:

> No current officer or employee of a state, county or municipal agency shall knowingly, or with reason to know:
>
> (i) solicit or receive anything of substantial value for such officer or employee, which is not otherwise authorized by statute or regulation, for or because of the officer or employee's official position; or (ii) use or attempt to use such official position to secure for such officer, employee or others unwarranted privileges or exemptions which are of substantial value and are not properly available to similarly situated individuals.

Mass. Gen. Laws ch. 268A, § 23(b)(2).

First, the state ethics statute employs a negligence standard (applicable to officials "with reason to know"), which has no place in the context of Hobbs Act extortion, a crime punishable by up to 20 years' imprisonment. *See, e.g.*, *Ruan v. United States*, 597 U.S. 450, 466 (2022) ("[W]e have long been reluctant to infer that a negligence standard was intended in criminal statutes." (citation omitted)). Rather, the Hobbs Act requires *quid pro quo* bribery, characterized

5

by subjective "agreement to perform specific official acts" in exchange for payment.  *Correia*, 55 F.4th at 29 (citation omitted).

Second, subsection (i) is expressly a gratuity statute, which binding precedent holds is beyond the scope of the federal bribery laws.  *See* Mass. Gen. Laws ch. 268A, § 23(b)(2)(i) (providing that a public official shall not "solicit or receive anything of substantial value . . . for or because of the officer or employee's official position"); *United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013) ("Bribery requires intent 'to influence' an official act or 'to be influenced' in an official act, while illegal gratuity requires only that the gratuity be given or accepted 'for or because of' an official act." (quoting *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999)); *Snyder v. United States*, 603 U.S. 1, 5-6 (2024) (holding gratuities insufficient to support conviction for federal program bribery).

In denying Mr. Tompkins's Motion to Strike the allegations regarding state ethics law from the Indictment, the Court opined that Mr. Tompkins's "understanding of the permissible and impermissible limits of his official position is material and relevant" to the *quid pro quo* inquiry because "the Government will argue at trial that, based on his experience in prior state ethics matters, Tompkins knew—or at least should have known—that he could not use his position as Sheriff to leverage a benefit that he could not otherwise have received."  Dkt. 94 at 10.  Respectfully, whether Mr. Tompkins knew or "should have known" that he could not obtain a benefit as a result of his position as Sheriff is not probative of whether or not he engaged in a *quid pro quo* exchange of official acts for payment.

The Court should reject any government argument that the contested evidence is relevant to one of the permissible purposes enumerated in Rule 404(b)(2), including, *inter alia*, "intent"

and "knowledge."  "When the government seeks to admit evidence of a defendant's knowledge, . . . the government must prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act."  *United States v. Martin*, 796 F.3d 1101, 1106 (9th Cir. 2015) (citation omitted).  Here, simply put, any violation by Mr. Tompkins of the state ethics statute is utterly irrelevant to proving the *mens rea* required for *quid pro quo* bribery.  This disconnect between the *mens rea* requirements of potentially applicable state law and the charged violations of federal law precludes admissibility of the state law violations under Rule 404(b).  *See Martin*, 796 F.3d at 1106 (holding that district court committed "serious error" in "admitting evidence of [a] prior state tax audit" in a "prosecution of federal tax violations"; "we can perceive no relevant connection between [defendant's] awareness of rules about the characterization of farm expenses under Idaho tax law, and whether she had knowledge of federal tax law governing the reporting of income"); *United States v. Derington*, 229 F.3d 1243, 1247 (9th Cir. 2000) ("Intent to violate a state regulation . . . is not the same as intent to steal or destroy," such that "[t]he evidence was not admissible to prove intent as it related to [defendant's] defense"); *United States v. Riddle*, 103 F.3d 423, 431 (5th Cir. 1997) ("[T]he government's evidence and argument concerning [regulatory] violations . . . impermissibly infected the very purpose for which the trial was being conducted—to determine whether [defendant] willfully misapplied bank funds with an intent to injure and defraud the bank, not whether [defendant] violated a regulatory statute prohibiting the bank from extending him credit in excess of $5,000." (citation omitted)); *United States v. Hall*, 858 F.3d 254, 267 (4th Cir. 2017) ("Because Defendant's prior possession conviction did not require a finding of specific intent, the only relevance that conviction could have to his intent to distribute marijuana

on a later, unrelated occasion is that it tends to suggest that Defendant is, in general, more likely to distribute drugs because he was involved with drugs in the past.  This is precisely the propensity inference Rule 404(b) prohibits.").

In addition to these legal distinctions, Mr. Tompkins's alleged violations of state ethics rules are factually far removed from the charges in this case, all of which are predicated upon his interactions with Frank Perullo, a cannabis executive, from 2020 to 2023 regarding an equity interest in Ascend and subsequent refund of the investment.  Mr. Tompkins having allegedly asked retail shops to take down a political opponent's signs 13 years ago, and his having allegedly used SCSD staff for childcare, are factually inapposite.

Even assuming *arguendo* the evidence at issue carries some special relevance, any such minimal probative value is "substantially outweighed by [the] danger of . . . unfair prejudice, confusing the issues, misleading the jury, [and] wasting time."  Fed. R. Evid. 403.  The jury will not be asked to decide whether or not Mr. Tompkins violated state ethics laws.  Rather, it will be asked to determine whether the government has satisfied its burden of proving Hobbs Act extortion in violation of federal law.  As set forth *supra*, these separate bodies of law carry meaningfully different legal standards.  Ultimately, evidence as to whether or not Mr. Tompkins violated state ethics laws will only serve to distract the jury by introducing a legal standard different than the one that the Court will instruct it to apply to Mr. Tompkins's conduct.  *See United States v. Barnes*, 979 F.3d 283, 302 (5th Cir. 2020) (affirming refusal to instruct on Medicare regulations and observing, "[i]t is not difficult to imagine a jury confusing the standards articulated in the Medicare regulations with the appropriate legal standard in a criminal case").  It will also unfairly prejudice Mr. Tompkins if the jury "infer[s] a violation of the federal

8

laws merely from evidence of a violation of state law." *United States v. Margiotta*, 662 F.2d 131, 143 (2d Cir. 1981), *abrogated on other grounds*. The evidence will additionally result in a mini-trial regarding issues that are far afield from the facts of this case (*e.g.*, whether Mr. Tompkins asked for campaign signs to be taken down more than a decade ago), which will unnecessarily expend jurors' time and attention.

The prospect of jury confusion is enhanced by the government's designation of the entirety of Massachusetts General Laws Chapters 268A and 268B, totaling 50 pages, as exhibits. The Indictment cites only part of one subsection of the state ethics laws. Even assuming *arguendo*, and contrary to the arguments set forth herein, that that one subsection and Mr. Tompkins's alleged violations thereof might be relevant and admissible, the remainder of the state ethics laws are clearly irrelevant. As discussed *supra* pages 5-6, the state ethics laws are far broader in application than the Hobbs Act's prohibition on extortion. And, to make matters worse, certain provisions of the ethics laws prohibiting conflicts of interest (entirely irrelevant to Mr. Tompkins's prior disposition agreements) could arguably be found to apply to Mr. Tompkins's financial interest in Ascend. *See* M.G.L. ch. 268A, §§ 6A, 13(a). Presenting these utterly irrelevant portions of the state ethics laws to the jury will create an entirely unjustified risk that the jury will rely upon perceived ethical or possible state conflict of interest violations to convict Mr. Tompkins in this federal criminal case. Such allegations are not within 18 U.S.C. § 1951 or any other federal statute, *see Skilling v. United States*, 561 U.S. 358, 410-11 (2010), but instead suggest an uncharged state violation with a different *mens rea* requirement.[1] Indeed, as

---

[1] The defense denies that any conflict of interest existed, but contends that it should not be required to litigate ethics or state law disputes when defending allegations of criminal extortion in federal court.

discussed *infra* pages 10-11, the Honorable J. Sorokin has held that a mere violation of state ethics law does not render a defendant's conduct "wrongful" for purposes of the Hobbs Act.

Perhaps most problematic from a Rule 403 perspective is the SEC Preliminary Inquiry notice, attached hereto as Exhibit 1, which cites purported ethical violations by Mr. Tompkins that were not ultimately included in any disposition agreement. More specifically, the notice asserts, without providing any basis to support the accusations, that ███████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ These untested allegations contribute nothing of substance regarding Mr. Tompkins's knowledge of the ethics laws, which is the government's theory of relevance. And they raise a serious risk that the jury will infer that the allegations are true and conclude that Mr. Tompkins is a dishonest public official. This risk of unfair prejudice is increased by the SEC enforcement procedures, also designated as a government exhibit and attached hereto as Exhibit 2, which state that a preliminary inquiry notice only issues "when there is some reliable evidence to support the allegations. . . ."

Evidence regarding state ethics rules and alleged violations thereof is similarly irrelevant with respect to the government's alternative theory of extortion by fear of economic loss. Indeed, the Honorable Judge Sorokin has so held, rejecting a government argument that state ethical violations could prove the defendant's use of economic fear was "wrongful." In reaching this result, the Court first noted that the relevant state statute (the same one at issue here)

"contains no criminal sanctions." *United States v. Brissette*, No. 16-CR-10137, 2020 WL 718294, at *17 (D. Mass. Feb. 12, 2020) (Sorokin, J.) (quoting *Saccone v. State Ethics Comm'n*, 395 Mass. 326, 330 (Mass. 1985)).[2]  According to the Massachusetts Supreme Judicial Court, "section 23 'was not intended as a set of specific provisions punishable [by penal sanction or] by [civil] fine, but rather, it performs a particularly useful role in outlining the principles of the other more concrete provisions" of the state ethics laws. *Id.* (quoting *Saccone*, 395 Mass. at 333). This lack of criminal penalty "render[ed] the government's effort to use" the state statute "as a basis for federal criminal liability even more problematic from a constitutional standpoint." *Id.* at *18 n.36.  Second, J. Sorokin relied upon the United States Supreme Court's express refusal to "construe the Hobbs Act 'in a manner that . . . involves the Federal Government in setting standards of good government for local and state officials.'" *Id.* at *18 (quoting *McDonnell v. United States*, 579 U.S. 550, 577 (2016)); *see also United States v. Tavares*, 844 F.3d 46, 49, 54 (1st Cir. 2016) (finding the government "overstepped its bounds in using federal criminal statutes to police" what it deemed "unappealing conduct" by state officials); *United States v. Walker*, 490 F.3d 1282, 1299 (11th Cir. 2007) (stating that federal courts are not empowered to "instruct state officials on how to conform their conduct to state law, because this power is reserved to the states").  Those concerns are, of course, equally applicable here.

Finally, and independent of all of the foregoing arguments, evidence that Mr. Tompkins settled the alleged ethics violations is inadmissible under Fed. R. Evid. 408, which generally precludes admission of "furnishing, promising, or offering—or accepting, promising to accept,

---

[2] Violations are criminally punishable when committed "with fraudulent intent," Mass. Gen. Laws ch. 268A, § 26, but that is not alleged here.

or offering to accept—a valuable consideration in compromising or attempting to compromise [a] claim" in order to "prove . . . the validity or amount of a disputed claim." The advisory committee notes expressly provide that, in a criminal case, "[a]n offer or acceptance of a compromise of any civil claim is excluded under the Rule if offered against the defendant as an admission of fault." Here, the government's exhibit list includes two disposition agreements between Mr. Tompkins and the SEC. The agreements themselves, which the government attached in opposition to the defense motion to strike, clearly reflect that Mr. Tompkins promised to pay "valuable consideration" ($2,500 and $12,300, respectively) to "compromis[e]" the disputed claims. Dkt. 42-1 and 42-2.

To the extent the government argues that evidence of the settlements is not offered to prove the validity of the ethics complaints, that contention should be rejected. The settlement evidence carries no marginal probative value with respect to Mr. Tompkins's knowledge of the underlying regulations beyond what the mere fact of the ethical complaints would show. Any *arguendo* marginal probative value that the settlement evidence might hold is substantially outweighed by the palpable danger that the jury will assume, in direct contravention of Rule 408, that Mr. Tompkins committed the ethical violations.

## III.    Conclusion

For the foregoing reasons, the defense respectfully requests that this Honorable Court exclude evidence regarding state ethics laws and any state ethical violations from the federal trial in this matter.

## COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

Undersigned counsel conferred with the government, and the government opposes the

relief requested in this Motion.

> Respectfully Submitted,
> STEVEN TOMPKINS
> By His Attorney,
>
> **/s/ Martin G. Weinberg**
> Martin G. Weinberg, Esq.
> Mass. Bar No. 519480
> 20 Park Plaza, Suite 1000
> Boston, MA 02116
> (617) 227-3700
> owlmgw@att.net

Dated: July 16, 2026

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, July 16, 2026, a copy of the foregoing document has been served via email on the government.

> **/s/ Martin G. Weinberg**
> Martin G. Weinberg, Esq.