UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | No. 25-CR-10334-MJJ |
| STEVEN WAYNE TOMPKINS,<br>Defendant | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION TO ADMIT SCSD RECORDS**

The government's motion seeks to introduce the SCSD Employee Handbook and six versions of the annual Code of Conduct for one sole stated purpose: to prove Mr. Tompkins's alleged "contemporaneous knowledge of State ethics rules and, thus, his intent to act wrongfully when he demanded Ascend stock (and subsequent refund) from Francis Perullo." Dkt. 170 at 1. The government's logic suffers from a number of flaws.

First, it runs headlong into this Court's Order denying the government's Motion In Limine to Admit Ethics Records. As the Court observed in its Order, "[a]t present, . . . Defendant does not dispute that he knew he could not use his official position to obtain an unwarranted benefit. Rather, his defense is that he did not exploit his office at all and that the transaction at issue was unrelated to his official position." Dkt. 159. This picture has not meaningfully changed in the first days of trial. Undersigned counsel's statement to the jury characterizing the transaction as "a risk-free loan from Steve Tompkins to Frank Perullo," Dkt. 170 at 1, is fully consistent with the defense that Mr. Tompkins "did not exploit his office at all

and that the transaction . . . was unrelated to his official position." Contrary to the government's suggestion, the Court's ruling was not limited to Mr. Tompkins's "prior disposition agreements" regarding alleged ethics violations. Dkt. 170 at 1. Rather, the government also sought to introduce the state ethics laws themselves. *See* Dkt. 103 at 9. The Employee Handbook now proffered purports to incorporate those same statutes. *See* Exhibit N at 13 ("For further information, please review G.L. c. 268A.").

Second, the government utterly fails to acknowledge the Honorable Judge Sorokin's decision (previously cited numerous times by the parties in pre-trial litigation) squarely rejecting a government argument that state ethical violations could prove the defendant's use of economic fear was "wrongful" within the meaning of the Hobbs Act. As J. Sorokin noted, the relevant state statute "contains no criminal sanctions." *United States v. Brissette*, No. 16-CR-10137, 2020 WL 718294, at *17 (D. Mass. Feb. 12, 2020) (Sorokin, J.) (quoting *Saccone v. State Ethics Comm'n*, 395 Mass. 326, 330 (Mass. 1985)). This lack of criminal penalty "render[ed] the government's effort to use" the state statute "as a basis for federal criminal liability even more problematic from a constitutional standpoint." *Id.* at *18 n.36. J. Sorokin also relied upon the United States Supreme Court's express refusal to "construe the Hobbs Act 'in a manner that . . . involves the Federal Government in setting standards of good government for local and state officials.'" *Id.* at *18 (quoting *McDonnell v. United States*, 579 U.S. 550, 577 (2016)). If the state ethics statutes cannot support a finding of wrongfulness under the Hobbs Act, the SCSD's Employee Handbook and Codes of Conduct certainly may not either. The Employee Handbook provides, at the very outset, a disclaimer that it "is informational only" and "[i]ts provisions are not" even "conditions of employment." Exhibit N at 5.

Third, the government is wrong in suggesting that the proffered exhibits are "uncontroversial" in light of the defense's representation that it does not dispute Mr. Tompkins's knowledge that he could not use his official position to obtain an unwarranted benefit. Dkt. 170 at 2. The defense has not, and does not intend to, argue to the jury that Mr. Tompkins's receipt of an equity interest from Mr. Perullo and subsequent refund was not wrongful because Mr. Tompkins was entitled to receive benefits as a result of his official position. But that does not mean that the jury should be provided with dozens of pages of exhibits arguably supporting a finding that Mr. Tompkins violated an employee code of conduct not enforceable in a federal criminal courtroom.

The government, notably, does not cite any specific portion or language of any of the proffered exhibits to establish their relevance. And the documents certainly include language that might lead a jury to hold Mr. Tompkins to a standard of conduct far higher than the federal prohibition on extortion. The Employee Handbook is preceded by a letter from Mr. Tompkins telling employees, "[a] very high standard is expected from those of us who work in the public sector." Exhibit N at 2. The Code of Conduct similarly states, "[t]he Sheriff has set a very high standard of performance and all staff is responsible and accountable to the public. The importance of working with integrity and creativity is paramount even when the work is challenging and the resources are limited." Exhibit YYY at 1. The only remotely applicable provision of the Handbook vaguely states that "[e]mployees are not to engage in any conduct which reflects unfavorably upon the Department." Exhibit N at 13. It goes on to provide, "[e]mployees are prohibited from engaging in any conduct which is intended to secure private gain, giving preferential treatment to any person, or preventing any person from securing

benefits to which s/he is entitled. Employees are prohibited from engaging in any conduct which creates the impression that they will use their positions for such purposes. Employees may not solicit or accept any gift, gratuity, favor, entertainment, testimonial, loan, or other item of monetary value, from any person who has any interest before the Department." *Id.*; *see also* Exhibit YYY at 2 ("Employees are prohibited from using their official positions to secure privileges for themselves or others.").

While the defense denies that Mr. Tompkins violated any of the foregoing provisions (because he denies that his transaction with Mr. Perullo was related to his official position), that does not mean that the government should be free to inject into the trial standards of conduct indisputably inapplicable to the present Hobbs Act extortion prosecution, which the jury might perceive to have been violated. To predicate a finding of "wrongfulness," and thus a federal conviction punishable by up to 20 years imprisonment, on a perceived violation of the foregoing standardless employer documents would be to render the Hobbs Act unconstitutionally vague. *See, e.g.*, *Skilling v. United States*, 561 U.S. 358, 402-03 (2010).

Respectfully Submitted,
STEVEN TOMPKINS
By His Attorneys,

**<u>/s/ Martin G. Weinberg</u>**
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Dated: August 27, 2026

**CERTIFICATE OF SERVICE**

I, Martin G. Weinberg, hereby certify that on this date, August 27, 2026, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.